# Commonwealth *v.* Johnson, Appellant.

*Criminal law — Murder — Witness — Expert—Coroner who is a physician—Evidence—Interpreter—Explanation of absence of witness.*

1. Where on the trial of an indictment for murder, the coroner, who is also a physician, is called by the Commonwealth, and without any preliminary examination as an expert, and without objection by defendant, testifies that the wound which caused the death was inflicted some hours before death, and gives technical reasons of a physician or surgeon for his statement, and he is subjected to a searching cross-examination as to all the technical matters pertaining to the injury and its probable effect, but is not cross-examined as to his qualifications as an expert, the defendant, after a verdict of guilty, will not be heard to complain of the admission of the coroner's testimony for the reason that he had not qualified as an expert.

2. While the competency of the witness should first appear before he is permitted to express an opinion, and the general practice is to interrogate him on this subject before his testimony is received, yet when the opposing party knows that a witness is about to give

testimony which should come from an expert and especially objects on that ground, he should exercise his right to cross-examine as to the qualifications of the witness. If he does not do so, he should not be heard to complain.

3. In the examination of witnesses who speak through an interpreter, it is sometimes difficult to control all the answers given to questions; when an improper answer is given, it is sufficient if the court promptly strikes such evidence from the record. The court will not reverse the judgment and order a new trial, because the answer is heard by the jury, unless it might prejudice the accused.

4. Where on a murder trial bad faith is insinuated against the Commonwealth because a particular person was not in court as a witness, evidence in explanation of his absence is admissible.

5. Where on a trial for murder, a very material question in the case was the length of time the deceased had lived after receiving his fatal wound, and such time could only be fixed from the evidence of physicians who examined the body and those called as experts, and such evidence was conflicting, it was for the jury to determine the question of time under proper instructions from the court.

Argued September 29, 1919. Appeal, No. 335, Jan. T., 1919, by defendant, from judgment of O. & T. Erie Co., Feb. T., 1919, No. 40, on verdict of guilty of murder of the first degree in case of Commonwealth v. William Johnson et al. Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder. Before ROSSITER, P. J.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions, sufficiently set forth in the opinion of the court.

*S. Y. Rossiter,* with him *H. Bedford Duff,* for appellant.

*Robert H. Firman,* District Attorney, with him *M. Levant Davis,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 5, 1920:

The appellant, convicted of felonious homicide, complains of the erroneous reception of evidence, and misstatements of and prejudicial comment on the evidence by the court in its charge to the jury. A part of the testimony of the coroner was objected to for the reason that he had not qualified as an expert witness. The competency of the witness was a primary question for the court. This should have been made to appear and been passed upon by the court before the witness was permitted to express any opinion. But the knowledge and experience of the witness, or his competency, may appear otherwise than by direct inquiry into that matter. In the present case the coroner was a physician, and, before the question here objected to was asked, had described the wound on the deceased's body and the bones broken by the blow. He stated, without objection, that the wound was produced by a blunt instrument and had been inflicted for some time, probably a number of hours, before death, and had given his reasons therefor, which were the technical reasons of a physician or surgeon. He described the condition of the brain with relation to the external matter collected therein and its effect. After he had thus testified, he was asked whether he found any other evidence that would lead him to believe the injury causing the death of the deceased had been inflicted for some length of time, to which he replied: "There was not so very much blood in the body. The body had bled a good deal; and it must have been bleeding from a small place, because that was the only place it had to bleed from." This question scarcely called for the expression of an opinion, but even if we assume that his belief was merely an impression formed from the condition in which he found the body, there was, nevertheless, sufficient prior testimony from this witness to admit the answer as the opinion of an expert. Moreover, the witness was subjected to a searching cross-examination by appellant's counsel on all technical mat-

ters pertaining to the injury and its probable effect, and had the former not been a physician of some ability it would have been readily perceived as a result of such examination.   While the competency of the witness should first appear before he is permitted to express an opinion, and the general practice is to interrogate him on this subject before his testimony is received, yet when the opposing party knows that a witness is about to give testimony which should come from an expert, and specifically objects on that ground, he should exercise his right to cross-examine as to the qualifications of the witness.   If he does not do so, he can not be heard to complain.   If the right is denied him, it would in a material matter place him in a position to here renew his complaint.   The appellant did not offer to cross-examine the witness and we have no doubt his reason for not doing so was the knowledge of counsel that the witness was thoroughly competent to testify as an expert.   The same observation may be made as to the second assignment.

In the examination of witnesses who speak through an interpreter, it is sometimes difficult to control all the answers given to questions; when an improper answer is given, it is sufficient if the trial judge promptly strikes such evidence from the record.   The court will not reverse the judgment, and order a new trial, because the answer is heard by the jury, unless it might prejudice the accused.   The court below endeavored to limit the testimony of Adam Goalda, who spoke through an interpreter, to the precise inquiry, which was to show the deceased was preparing to go back to the old country, and the witness knew this as a fact.   The witness so testified and later said that the deceased had stated "he was tired of this country."   This remark was promptly stricken from the record; it did the defendant no harm.

We find no merit in the fourth assignment of error; the testimony in relation to Aurel Seran was competent, as the court below said: "For the reason that at several oral arguments or tilts in court, impliedly at least, bad

faith was insinuated against the Commonwealth because Seran was not in court, and this evidence was in explanation of that insinuation."

We are not convinced that the court below committed any error in the several excerpts from the charge submitted to us for review. The charge was clearly right in the summary of evidence contained in the seventh assignment. Nor was it intended to exclude the testimony of the defendant by this statement: "The next that we hear of William Johnson he was on 18th and Chestnut, or in that vincinity, as testified to by Jack Johnson, at about 7:25 or 7:30." It was distinctly stated this was Commonwealth evidence and particular attention was called to the defendant's story as to his whereabouts at this particular time.

It was important to know how long the deceased had lived after receiving his fatal wound. It was a very material question in the case. The deceased was last seen alive about seven o'clock and the accused was in the alley, where the body was found, between six and seven, and his whereabouts shortly thereafter, from the viewpoint of both sides, would take him away from the scene of the crime. Death occurred at 8:30 the following morning. The defendant's evidence was most positive death must have resulted within two or three hours after the wound was inflicted, and as defendant was then in Cleveland, he could not be the author of the crime. The Commonwealth's testimony was just as clear that death might not take place for many hours after the infliction of the wound. The time could be fixed only from the evidence of the physicians who examined the body and those called as experts. Their testimony was conflicting, but it was for the jury under proper instructions from the court. We have examined the charge and this question was submitted fairly, without undue prominence to the testimony of either side and, in our view, it presented with care the defendant's salient points. The other incriminating evidence, the flight of the accused, possession of

stolen money property of the deceased, bloodstains on the trousers, and other circumstances, no doubt convinced the jury that he committed the crime. The record presents all the elements of murder in the first degree; defendant was accorded a fair and impartial trial; he was defended by able counsel, who guarded his interest at every step; and, having examined the record with care, we find in it no reversible error.

The assignments of error are overruled, the judgment is affirmed and it is directed that the record be remitted for the purpose of execution.