664 A.2d 525

**Ronald A. MILLER, Sr., Administrator of the Estate of Ronald A. Miller, Jr., Appellant,**

**v.**

**The BRASS RAIL TAVERN, INC., A Pennsylvania Corporation and Thomas E. McMaster, Appellees.**

Supreme Court of Pennsylvania.

Argued April 27, 1995.

Decided Aug. 24, 1995.

476

---

Robert H. Lugg, Lock Haven, for R.A. Miller.

Paul Welch, Lock Haven, for Brass Rail Tavern.

J. David Smith, Williamsport, for T.E. McMaster.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Ronald A. Miller, Sr., Appellant, administrator of the estate of Ronald A. Miller, Jr., appeals an order of the Superior Court which affirmed the judgment of the Clinton County Court of Common Pleas following a verdict in favor of The Brass Rail Tavern, Inc. and Thomas E. McMaster, Appellees. We granted allocatur in this case in order to address whether a non-physician coroner can testify as to time of death.

This action, brought pursuant to the Dram Shop Act,[1] was commenced after Ronald A. Miller, Jr. was killed in an automobile accident. During a non-jury trial, it was established that on July 8, 1989, the day prior to the accident, Ronald, Jr. began consuming alcoholic beverages around 12:00 noon while riding all terrain vehicles with two of his friends. After spending the afternoon together, Ronald, Jr. and his friends went to a local tavern in Beech Creek called Bobby's Place. The group remained at Bobby's Place for approximately one hour, and, in that time, Ronald, Jr. consumed at least two beers. Thereafter, and having been joined by yet another companion, the group of friends decided to proceed to The Brass Rail Tavern in Lock Haven. However, before they left Bobby's Place, they purchased a six-pack of beer which they consumed, in part, while en route to The Brass Rail.

They arrived at The Brass Rail at approximately 10:30 p.m., and again began to consume alcoholic beverages. Around 1:30 a.m. on July 9, 1989, the bartender announced the last opportunity to purchase alcohol. At that point, the group decided to return home. Before actually leaving the tavern, Ronald, Jr. attempted to buy more beer. However, because last call had already been given, his request was refused. Thereupon, the group set out to return to the Beech Creek area, but based on Ronald, Jr.'s inability to drive safely, another member of the group, Kevin Peters, drove Ronald, Jr.'s vehicle. Kevin drove to his house first, and, at that point, Ronald, Jr. resumed operation of the vehicle. Ronald, Jr. dropped his other two

1. 47 Pa.C.S. §§ 4–493, 4–497.

friends off between 2:15 a.m. and 2:30 a.m., but before parting company with them, Ronald, Jr. indicated that he intended to return to The Brass Rail Tavern. Some time later, Ronald, Jr. was involved in the tragic accident which resulted in his death.

At trial, Appellant called the Clinton County Coroner, Dean Wetzler, to testify based upon his investigations at the scene of the accident. At that point, Appellees requested an offer of proof with respect to the testimony of the coroner. After Appellant provided the court with a synopsis of the coroner's expected testimony, Appellees objected to that portion of the coroner's testimony which would otherwise constitute expert opinion. Appellees based their objection on Appellant's failure to identify the coroner as an expert witness in pre-trial interrogatories. The trial court determined that pursuant to Pennsylvania Rule of Civil Procedure 4003.5(b) the coroner would not be permitted to testify to expert matters, and more specifically, to the time of death. In addition to the discovery issue, the trial judge also addressed a competency issue, concluding that only an individual with a medical degree could render an opinion with regard to the time of death. Therefore, the trial judge excluded the coroner's testimony on that basis as well.

At the conclusion of the trial, the trial court ruled against Appellant. Even though the judge concluded that Appellant had proven by a fair preponderance of the evidence that The Brass Rail Tavern had served Ronald, Jr. while he was visibly intoxicated, the court concluded that Appellant had failed to establish a causal link between the negligence of the Appellees and the accident which resulted in Ronald, Jr.'s death. Specifically, the court determined that

> [Appellant] has argued that a fair preponderance of the evidence established that the accident occurred at 3:00 A.M. which is close enough in time to Ronald's consumption of alcoholic beverages at the Brass Rail to link his high level of intoxication at the time of death with [Appellee's] negligence. The difficulty with this argument is that there is no evidence from which the Court can infer that the accident

occurred at 3:00 A.M., or for that matter at 4:00 A.M., 5:00 A.M., 6:00 A.M., or even 7:00 A.M. The further the time of the accident gets removed from the time Ronald consumed intoxicants at the Brass Rail (no later than 1:30 A.M.), the weaker the causation link becomes.

The Court is mindful that [Appellant] attempted to establish the time of death through Coroner Wetzler as 3:00 A.M. which would have been within an hour of the time that he left off his passengers. However, Coroner Wetzler was a non-medical witness and would not have been competent to attempt to establish the time of death in the fashion in which [Appellant] desired.

*Miller v. The Brass Rail Tavern, Inc. and Thomas McMaster,* No. 759-89 Civil, slip op. at 16–17 (CCP Clinton, July 22, 1992).

The Superior Court affirmed, concluding that

Previous cases in which a coroner was allowed to testify concerning the time of a decedent's death involved a coroner who was a physician. (citations omitted). Appellant has cited none, nor are we aware of any, in which a lay coroner has been found qualified to render an opinion as to time of death.

*Miller v. Brass Rail Tavern, Inc.,* 434 Pa.Super. 383, 386, 643 A.2d 694, 695 (1994) (Cavanaugh, Saylor, JJ.; Wieand, J., dissenting).

In this appeal, Appellant argues that formal academic instruction is not necessary as a prerequisite to the admission of expert testimony on the time of death, and, in that regard, the Superior Court erred in concluding that the trial court had not abused its discretion. Furthermore, he argues that the trial court also abused its discretion by refusing to permit the county coroner to testify based on an alleged pre-trial discovery violation. We agree.

Initially, we note that since the Superior Court did not address the discovery issue, focusing instead on the coroner's competency to testify as an expert, we shall begin our analysis

with the question of whether Coroner Wetzler was qualified to render expert testimony regarding the time of death.[2]

While reviewing this question, a majority of the Superior Court panel cited two Pennsylvania cases in which a coroner was permitted to testify as an expert witness with regard to the time of death: *Commonwealth v. Lewis,* 472 Pa. 235, 372 A.2d 399 (1977) and *Commonwealth v. Johnson,* 265 Pa. 491, 109 A. 218 (1920). In both of those cases, however, the coroner was also a physician. Consequently, based on its failure to find any authority wherein a non-physician was permitted to render an opinion on the time of death, the Superior Court affirmed the trial court's decision to exclude the testimony. The court held:

> We find that on the basis of the record before it, the lower court did not err in finding that Wetzler was not qualified to give an opinion on time of death. Appellant did not sustain his burden in showing that Wetzler's education or experience was such that he had a responsible pretension to specialized knowledge in the area under investigation. Although he testified that he had determined time of death previously, he did not indicate the number of cases in which he had done so. He did not explain the methodology he used, his basis of knowledge, his investigative techniques, nor his background in this area of forensics. His credentials to render an opinion as to time of death were not established. The lower court did not err in excluding his testimony on this basis.

*The Brass Rail Tavern,* 434 Pa.Super. at 388, 643 A.2d at 696.

 We disagree, and, in so concluding, find Appellant's argument and the well reasoned dissenting opinion of Judge Wieand persuasive. It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has **any** reasonable pretension to specialized knowledge on the subject under

2. We note that even though the competency issue was first raised by the trial judge, Appellees, nonetheless adopted the objection as their own. (N.T. 5/11/92 at 17).

investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. *Commonwealth v. Gonzalez,* 519 Pa. 116, 128, 546 A.2d 26, 31 (1988); *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Moodie v. Westinghouse Electric Corp.,* 367 Pa. 493, 501, 80 A.2d 734, 738 (1951). It is also well established that a witness may be qualified to render an expert opinion based on training and experience. *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 598, 437 A.2d 1198, 1202 (1981) (plurality opinion). Formal education on the subject matter of the testimony is not required, *see Reardon v. Meehan,* 424 Pa. 460, 464, 227 A.2d 667, 670 (1967); *Churbuck v. Union Railroad Company,* 380 Pa. 181, 110 A.2d 210 (1955); *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 608, 533 A.2d 436, 440 (1987), *allocatur denied,* 520 Pa. 589, 551 A.2d 215 (1988); *Gottfried v. American Can Co.,* 339 Pa.Super. 403, 489 A.2d 222 (1985); *Commonwealth v. Daniels,* 280 Pa.Super. 278, 286–87, 421 A.2d 721, 726 (1980), nor is it necessary that an expert be a licensed medical practitioner to testify with respect to organic matters. *Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892 (1974). It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, *Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982), only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience. *Commonwealth v. Seese,* 512 Pa. 439, 442, 517 A.2d 920, 921 (1986). *See also Hayes Creek Country Club, Inc. v. Central Penn Quarry Stripping and Construction, Co.,* 407 Pa. 464, 181 A.2d 301 (1962) (purpose of allowing testimony of qualified expert is to assist trier of fact with information which the ordinary layman does not possess).

■ While we recognize that the qualification of an expert witness rests within the sound discretion of the trial judge, and furthermore, absent an abuse of that discretion, the decision of the trial judge should be upheld, in this case, the trial judge refused to permit Coroner Wetzler to testify before

Appellant had a chance to qualify him. On the basis of Appellant's proffer, the trial judge concluded:

> As an aside to that ruling, the Court at this time, even if it were to permit him to testify as an expert, has severe reservations at this point that he would be legally competent to provide the Court with an estimate of the time of death. At this point the Court believes that that has to be the province of someone with a medical degree. No one has provided the Court with any authority to the contrary. So, I realize I am getting ahead of myself because I have ruled that he cannot testify as an expert. So, that would be independent of whether he would be competent to give the opinion.

(N.T. 5/11/92 at 26).

In its ruling on Petitioner's post-trial motions, the trial court stated that

> as the Court stated in its Opinion and Decision, [Coroner Wetzler] "was a non-medical witness and would not have been competent to attempt to establish the time of death." *Miller v. Brass Rail Tavern, Inc.*, No. 759–89 Civil (July 22, 1992) at 16–17. The Court has reviewed the authority that Plaintiff contends stands for the proposition that "[n]on-medical persons have been permitted to testify within their special knowledge" and has found that this statement seems to be limited to showing the existence of "organic problems," diseases and ailments. *Simmons v. Mullen*, 231 Pa.Super. 199, 209, 331 A.2d 892, 898 (1974). Nowhere is it stated that non-medical witnesses may be competent to testify to the time of a person's death.
>
> Indeed, a reading of relevant law suggests that a lay coroner's testimony may extend to "his visual observations of ... bodies, his excision of the organs and tissue, and his delivery of the organs and tissue" to a pathologist, but not to medical opinions (which would have to be delivered by an expert medical witness). *Commonwealth v. Smith*, 480 Pa. 524, 532 & [sic] n. 4, 391 A.2d 1009, 1013 & [sic] n. 4 (1978). It would seem to the Court that the time of one's death would be a medical opinion.

*Miller v. Brass Rail Tavern, Inc.*, No. 759–89 Civil, slip op. at 4–5 (CCP Clinton, April 30, 1993).

As such, before Appellant even had the opportunity to qualify Coroner Wetzler as an expert, the trial judge determined that as a matter of law, a non-medical witness would not be qualified to render an opinion on the time of death. The Superior Court upheld the trial court's resolution of this issue. We, on the other hand, believe that a mortician of twenty seven years, duly licensed by this Commonwealth, who has also served in the dual capacity as county coroner for fifteen years, may have specialized knowledge regarding the time of death which would not otherwise be known to a lay individual. Consequently, we hold that the refusal to qualify Coroner Wetzler as an expert witness based solely upon his lack of formal medical training was an abuse of discretion.

■ Because we have reversed the Superior Court's determination of this issue, we must address the trial court's alternate justification for excluding the coroner's testimony— the failure to identify Coroner Wetzler as an expert witness in pre-trial interrogatories.

Pennsylvania Rule of Civil Procedure 4003.5 provides:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of the expert of have the interrogatories answered by his

expert. The answer or separate report shall be signed by the expert.

\* \* \* \* \* \*

(b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

The explanatory notes which follow this discovery rule specifically provide that if the answering party or the expert does not fully comply with the requested discovery, "the court under subdivision (b) or (c) **may** exclude or limit the testimony of such expert if offered at the trial." (emphasis supplied).

Following Appellant's proffer with respect to the coroner's proposed testimony, Appellees objected based upon the fact that, even though they knew the coroner was slated to be a factual witness, they had not been provided information that the coroner would be providing an opinion as to the time of Ronald, Jr.'s death. They argued that if the coroner were permitted to testify on that issue, they would be substantially prejudiced in their ability to cross-examine him and in their ability to present a defense.[3] In response to Appellees' claim of prejudice, Appellant argued that Appellees knew that the county coroner was going to testify and furthermore, knew the

3. It is clear that the purpose of Rule 4003.5 is to prevent surprise. *See Kaminski v. Employers Mutual Cas. Co.*, 338 Pa.Super. 400, 408, 487 A.2d 1340, 1344 (1985). Instead of using Rule 4003.5 as a shield to protect against surprise, Appellees attempted to wield Rule 4003.5 as a sword to prevent the admission of the coroner's testimony. Appellees admitted that they knew Coroner Wetzler was going to testify (N.T. 5/11/92 at 12), but that their trial strategy was to rely on the interrogatories. (N.T. 5/11/92 at 13). Furthermore, trial counsel for Appellee, The Brass Rail Tavern, Inc., advised the court that "Your Honor, clearly, there's a number of trial strategies and a number of ways to defend the case. One of the ways we elected to defend this case was to object on the basis that the discovery wasn't complied with." (N.T. 5/11/92 at 19).

substance of his proposed testimony. Appellant urged that if any prejudice were present, it would be in not permitting the coroner to testify to the time of death.

Nevertheless, based on Appellant's failure to identify the coroner as an expert witness in his answers to pre-trial interrogatories, the trial judge refused to permit the testimony, concluding:

> The Court would note that Pa.R.C.P. No. 4003.5(b) provides if the identity of an expert witness is not disclosed in compliance with Subdivision (a)(1) of this Rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. The use of the word "shall" in that particular Rule, no doubt, makes it obligatory or mandatory. The Court probably doesn't have a lot of discretion. There is a following sentence which allows the Court to determine if the failure to disclose was the result of extenuating circumstances beyond the control of the defaulting party. I'm not concerned with such circumstances, since everyone was aware of Coroner Wetzler's presence in the case.

(N.T. 5/11/92 at 25).

Appellant argues that Rule 4003.5 does not apply to Coroner Wetzler because he was not hired in anticipation of litigation. Citing *Neal by Neal v. Lu*, 365 Pa.Super. 464, 530 A.2d 103 (1987), Appellant contends that "[l]ike its almost identical federal counterpart, Fed.R.Civ.P. 26(b)(4), Rule 4003.5 applies only to discovery of experts that a litigant has 'retained or specifically employed' in the course of preparing for litigation." (Appellant's Brief at 14). In support of that contention, Appellant submits that Coroner Wetzler's involvement in this case resulted solely from his official position within the county.

Even though we have not heretofore addressed this specific issue, our Superior Court has addressed the parameters of the rule. In *Neal by Neal v. Lu*, a defendant in a medical malpractice action offered his own opinion on plaintiff's prior medical treatment. Plaintiff objected to such opinion testimony, particularly because defendant had not identified himself

as an expert witness during pre-trial discovery as required in Pa.R.C.P. 4003.5. Noting that the explanatory notes to the rule specifically exempt party-experts from the rule, the Superior Court also observed that

> [defendant] did not "acquire" his opinions on the treatment of Rebecca's finger "in anticipation of litigation." He did not expend time and money developing his own knowledge or employing himself as an expert to gain a tactical advantage in the law suit brought against him by [plaintiff]. His opinions and knowledge, in short, were not the work product of a well-prepared litigant. They pre-dated any litigation and are the very gist of [plaintiff's] cause of action.

*Id.* at 472–473, 530 A.2d at 108. Consequently, the Superior Court ruled that the defendant's opinions fell "outside any reasonable definition of the phrase 'acquired or developed in anticipation of litigation.'" *Id.*

In another related case, albeit federal, plaintiff sought to depose Dr. Aronson, the Medical Examiner for the City of Philadelphia. Defendants opposed that form of discovery, arguing that the federal rules, specifically Rule 26(b)(4), required plaintiff to proceed by interrogatory not by deposition. The United States District Court for the Eastern District of Pennsylvania concluded that the rule's "protection is not limitless, but applies only to experts who were consulted with an eye toward litigation." *Harasimowicz v. McAllister,* 78 F.R.D. 319, 320 (1978) (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure, Civil § 2033 (1970)). In addition, the court held that

> Dr. Aronson made his examination without consulting defense counsel in this case and pursuant to his obligation to determine the cause of death. Indeed, the examination which forms the basis for Dr. Aronson's opinion was a matter of routine practice in the course of his duties as a City employee. (citation omitted).

We conclude that Dr. Aronson did not obtain or develop the information in anticipation of litigation or trial. Thus, he does not fall within the protective provisions of Fed.

R.Civ.P. 26(b)(4) and he should be treated as an ordinary witness subject to deposition.

*Id.*

We agree. Pa.R.C.P. 4003.5 specifically provides that discovery of an expert's facts and opinions, which are otherwise discoverable under the provisions of Rule 4003.1 and **acquired or developed in anticipation of litigation or for trial,** may be had through interrogatories. Coroner Wetzler was not called upon by Appellant or his counsel to determine the facts surrounding Ronald, Jr.'s death. Rather, he had been summoned by the people of Clinton County to carry out the duties of his office.[4] He was notified of the accident at approximately 7:30 a.m. by the County Communications Center, and after conducting an investigation, he made a determination with respect to the time of death. His contact with the accident was completed well before this instant action was initiated.

There is no doubt that the opinions of Coroner Wetzler, especially relating to cause of death and the time of death, constitute expert opinion. However, because Coroner Wetzler's opinions were not acquired or developed with an eye toward litigation, Rule 4003.5 is inapplicable. Instead, the general discovery provisions of Rule 4003.1 would have applied

---

**4.** Our legislature has provided:
 (a) The coroner having a view of the body shall investigate the facts and circumstances concerning deaths which appear to have happened within the county, regardless of where the cause thereof may have occurred, for the purpose of determining whether or not an autopsy should be conducted or an inquest thereof should be had, in the following cases:
 (1) sudden deaths not caused by readily recognizable disease …;
 (2) deaths occurring under suspicious circumstances, including those where alcohol, drugs or other toxic substances may have had a direct bearing on the outcome;

 \* \* \* \* \* \*

 (b) The purpose of the investigation shall be to determine the cause of any such death and to determine whether or not there is sufficient reason for the coroner to believe that any such death may have resulted from criminal acts or criminal neglect of persons other than the deceased.
16 P.S. § 1237. The coroner is also vested with the responsibility to issue a death certificate. 16 P.S. § 1244.

to Coroner Wetzler. Therefore, just as Rule 4003.5 would not have applied to limit discovery of Coroner Wetzler's testimony, the rule cannot be invoked to sanction Appellant for non-compliance. Accordingly, the trial court's exclusion of Coroner Wetzler's testimony based on Pa.R.C.P. 4003.5 was in error.[5]

5. Even if Rule 4003.5 were applicable, we note that the trial court's belief that the sanction authorized by Rule 4003.5 is obligatory, was in error. In *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986), we noted that enforcement of procedural rules is governed by the facts and circumstances of each particular case. Specifically, we stated that " '[i]t has been our policy to overlook ... procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result.' " *Id.* at 572, 517 A.2d at 1272 (citation omitted). Moreover, specifically addressing Rule 4003.5, we held that when a discovery violation occurs as a result of a failure to identify an expert witness, "the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party." *Id.* at 573, 517 A.2d at 1273. We outlined the basic considerations a trial court should review as follows:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith of [sic] willfulness in failing to comply with the court's order. *Id.* at 574, 517 A.2d at 1273 (quoting *Feingold v. SEPTA*, 339 Pa.Super. 15, 21, 488 A.2d 284, 287 (1985)). *See also Oelschlegel v. Mutual Real Estate Investment Trust*, 429 Pa.Super. 594, 633 A.2d 181 (1993) ("[e]ven if this notice were technically deficient, as appellant argues, we may overlook procedural errors where there was no bad faith, where there was substantial compliance with the rule's requirements, and where there was no prejudice or surprise."); *Linker v. Churnetski Transportation, Inc.*, 360 Pa.Super. 366, 520 A.2d 502 (1987), *allocatur denied,* 516 Pa. 641, 533 A.2d 713 (1987) ("[i]n the absence of bad faith or willful disobedience of the rules, the most significant considerations are the importance of the witness' testimony and the prejudice, if any, to the party against whom the witness will testify."); *Curran v. Stradley, Ronon, Stevens & Young*, 361 Pa.Super. 17, [29–31] 521 A.2d 451, 457 (1987) (recognition that mandatory preclusion discussed in *Kaminski v. Employers Mutual Casualty Co.*, 338 Pa.Super. 400, 487 A.2d 1340 (1985) had been abandoned in *Feingold*, and in its stead, the Supreme Court requires courts to balance the facts and circumstances of each case); *Werner v. Department of Public Welfare*, 109 Pa.Commw. 134, 530 A.2d 1004 (1987) ("[the] rules do not require the trial court to preclude the testimony. Rather, the court 'must balance the facts and circumstances of each case to determine the prejudice to each party.' ").

Therefore, the decision of the Superior Court is reversed and the case is remanded for a new trial.

MONTEMURO, J., is sitting by designation.