682 A.2d 806

**John ERDOS, Administrator of the Estate of Kelly Erdos, Deceased, Appellant,**

**v.**

**BEDFORD VALLEY PETROLEUM CO., Gerald E. Sell, G.E. Sell Truck and Trailer Repair, Allied Tank & Trailer Equipment Company, Appellees.**

Superior Court of Pennsylvania.

Argued May 1, 1996.

Filed Aug. 9, 1996.

Rehearing Denied Oct. 15, 1996.

556

John A. Adamczyk, Pittsburgh, for appellant.

Louis C. Long, Pittsburgh, for appellees.

Before POPOVICH, EAKIN and HESTER, JJ.

POPOVICH, Judge:

We are asked to review the order [1] of the Court of Common Pleas of Blair County granting a compulsory non-suit against the plaintiff/appellant, John Erdos, Administrator of the Estate of Kelly Erdos, Deceased. We affirm.

Our review of the record discloses that this case was initiated by a writ of summons and a subsequent complaint following the work-related death of Kelly Erdos as he was welding inside a compartment in a tanker-truck at the direction of his employer/G.E. Sell, d/b/a G.E. Sell Truck and Trailer Repair. The vehicle was assembled by Allied Tank & Trailer Equipment Company, owned by Bedford Valley Petroleum Company and maintenanced by Erdos. While the repair work was being performed by the use of a welding torch, fumes were emitted from an adjoining compartment to Erdos' work area, sparks ignited the fumes and caused an explosion killing Erdos.

 Erdos' estate instituted suit against Bedford and G.E. Sell, following which an amended complaint was filed to

---

1. The order was reduced to judgment on August 28, 1995. Record No. 83.

included Allied as an additional defendant. Sell and his company filed preliminary objections which dismissed each from the suit because of the exclusivity of the Workmen's compensation Act. See Record No. 20. Likewise, Allied's preliminary objections resulted in its removal from the litigation, but Bedford's preliminary objections were granted in part only to allow the strict liability prong of the plaintiff's suit to proceed to trial. Once the plaintiff completed his case-in-chief, a motion for compulsory non-suit was granted. Post-trial motions were denied, and this appeal ensued raising the claim that the court erred in excluding the plaintiff's expert from testifying "on matters concerning which procedures are safer and necessary to meet the applicable standard of care when providing a tank which had previously contained flammable liquid (gasoline) for welding." Appellant's Brief at i.

It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. *The test to be applied when qualifying an expert witness is whether the witness had any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.* It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required, nor is it necessary that an expert be a licensed medical practitioner to testify with respect to organic matters. It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

*Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 664 A.2d 525, 528 (1995) (Citations omitted; emphasis added).

■ In the case at bar, the plaintiff's expert (W.T. Niggel), prior to retiring in 1991 to open his own consulting firm, had been employed thirty-nine years in the chemical industry for a major chemical producer (Mobay). His responsibilities includ-

ed managing the corporation's transportation safety and services; to-wit:

Coordination and control of all emergency response activities of a highly centralized response system[ ], to hazardous materials transportation incidents.

Responsible for adherence to all Department of Transportation regulations on a corporate basis. Also responsible for OSHA regulations as they apply to the Hazard Communication Standard concerning labels and Material Safety Date Sheet distribution.

Responsible for the lease and construction specifications for all bulk equipment (railcars, special service tank-trucks, and semi-bulk containers).

Administrative control of the generation and distribution of all cautionary labels for drummed products, and Materiel Safety Data Sheet distribution to customers.

See Plaintiff's Expert's Curriculum Vitae at page 8. Also, the expert's educational background consisted of studying textile engineering at the Philadelphia Technical Institute and assorted non-degree courses "at UMKC and Northwestern University, in Chemistry, Chemical Engineering, Statistics, Management and Logistics." *Id.* at 9. Further, regulatory data promulgated by the Environmental Protection Agency and the Pennsylvania Department of Transportation regarding generating, transporting and disposal of residual amounts of hazardous material were also within the knowledge and expertise of the witness. *Id.* at 3–4.

Lastly, in his report, W.T. Niggel proffered an opinion that, based on his knowledge of the chemical industry's standards regarding the transportation and handling of hazardous flammable chemicals, Bedford was liable in failing to inspect the premises and G.E. Sell's skill, experience and knowledge in repairing tanks transporting flammable liquids (i.e., gasoline). *Id.* at 1–2.

Interestingly, the *Engineer's Report* on the accident prepared for Bedford agreed with plaintiff's expert that steam cleaning of the tank should have occurred before repair proce-

dures were begun. *Id.* at 3. Similarly, the Report joined the plaintiff's expert in holding that "G.E. Sell should have been equipped with [testing, breathing and some work-related apparatus], and should have used them." *Id.* at 4. Thus, the Report's author opined that the direct cause of the explosion and resultant death of Erdos "was the lack of adequate safety precautions by Mr. Erdos and the supervision and/or management of G.E. Sell Truck & Trailer Repairs during the welding process." *Id.* at 12. Bedford's absence from and control over the work site and the manner of repair exempted it from liability. *Id.* We make reference to Bedford's *Engineering Report* to show that the practices and procedures highlighted by the plaintiff's expert were not discounted by Bedford's report. The two versions of what occurred were consistent save for the variance as to the *responsibility factor.*

In *Montgomery v. South Philadelphia Medical Group, Inc.,* 441 Pa.Super. 146, 656 A.2d 1385 (1995), we found the commission of error with the trial court's prohibition of a board certified internist with a sub-speciality in cancer treatment from testifying to the standard of care owed by a physician's assistant to a patient complaining of breast pain or offering an opinion as to the steps that should have been taken by the medical practitioner in caring for such a patient.

Here, as in *Montgomery,* we hold that the trial court erred in excluding the plaintiff's expert's opinion as to the proximate cause of the decedent's death. Niggel's length of employment and knowledge regarding implementing safety measures as they apply to transporting hazardous material in the chemical industry is not so attenuated and is transferable to the petroleum industry. It appears that the trial court lost sight of the fact that *both* industries present an element of exposure to *hazardous materials,* be it in the generation, transportation or disposal of the product. Of necessity, therefore, when one speaks of transporting hazardous/flammable materials, the need to perform repairs or maintenance on the objects which store the product is inevitable.

Sub judice, the plaintiff's expert listed as one of his responsibilities during his work history with Mobay to be "[r]es-

pons[ibility] for the ... construction [and] specifications for all bulk equipment [which included] ... *special service tank trucks ....*" See Curriculum Vitae of Plaintiff's Expert (Emphasis added). Therefore, when one couples the length of service in the chemical industry with knowledge of safety procedures in the business involving *hazardous* materials and construction of tank-trucks used for specialty service, the plaintiff's witness (W.T. Niggel) qualified as an expert (exhibited reasonable pretension to specialized knowledge on the subject under investigation) to give testimony and opinion on the topic of hazardous materials in the petroleum industry. The trial court's failure to qualify the witness as an expert constituted an abuse of discretion. See *Miller*, supra; *Montgomery*, supra.

█ Nonetheless, with the plaintiff's failure to establish the elements of Section 388 of the Restatement (Second) of Torts in his case-in-chief, i.e., that the defendant "ha[d] no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition", the grant of the non-suit was warranted. See *Miller*, supra. More specifically, we find the remarks of the trial court on the law and facts in this regard are accurate and shall be adopted as our own; to-wit:

... the Motion for Compulsory Nonsuit is granted for the following reasons:

1. That Subsection B of the Restatement of Torts Second, Section 388, "... has no reason to believe that those for whose use the chattel is applied will realize its dangerous condition" has not been met and has not even been reached by the Plaintiff in the evidence. The Court relies on first the OSHA witness that the Plaintiff called that indicated all the work place violations were against G.E. Sell and they were responsible for those work place violations. G.E. Sell's Manager, Mr. Franklin testified that it was Mr. Kelly Erdos' responsibility to steam clean all the compartments, thus indicating that G.E. Sell knew of the dangerous condition and that is why they required steam cleaning of all the compartments. The prior truck repair, one month prior to this on behalf of Bedford Valley Petroleum Company by

G.E. Sell, welding inside of the tank as the testimony presented.

2. That such truck repair interior welding is a reason by Bedford Valley Petroleum to believe that Sell and/or Erdos would realize the alleged dangerous conditions of the truck.

3. That the safety requirements of steam cleaning the compartments in and of itself as set forth on the work orders that have been made reference to in this testimony that was required prior to the welding is and of itself enough to give them notice that they would have reason to believe that Sell and/or Erdos would realize the alleged dangerous conditions of the tank. The further checking by the witness, albeit called as if on cross by the Plaintiff as part of the case in chief, that Mr. Foor testified that he checked with other gas/fuel truck companies about the repairs and the repair facility prior to sending the Defendant's trucks in for repair and that finally, the dangerous condition was readily discoverable as required by the various case laws.

Therefore, as a matter of law, the requirements of Section 388 of the Restatement of Torts Second have not been reached and the Compulsory Nonsuit is granted.

Court Order dated May 24, 1995.

Accordingly, despite the trial court's commission of error in excluding the opinion testimony of the plaintiff's expert, we find that such error pales in comparison to the plaintiff's failure to disprove that the decedent was aware of the dangers associated with the welding work he was performing, which fact undermines the Section 388 Restatement (Second) of Torts claim and justifies affirmance of the entry of a compulsory non-suit. See, e.g., *Miller*, supra.

Order affirmed.

HESTER, J., files a Concurring and Dissenting Statement.

HESTER, Judge, concurring and dissenting.

I concur with the finding of the majority to the effect that the trial court erred in excluding the testimony of William Niggel, appellant's expert witness.

I respectfully dissent from that portion of the majority opinion which affirms the grant of the compulsory non-suit. The trial court ruled appellant had failed to prove appellee, Bedford Valley, had reason to believe decedent was not aware of the dangers involved in welding the tank of a truck used to transport gasoline, so there was no duty on the part of Bedford Valley to warn of the dangers involved.

Decedent was an eighteen-year old recent graduate of Altoona Vo–Tech High School. He had no experience or training with the type of welding involved herein. He was an entry-level welder. He had neither the knowledge, experience or equipment to perform the welding job safely. Decedent was in the process of grinding inside one of the four compartments within the fuel tank of a Bedford Valley tank-truck. That compartment had been steam cleaned. An explosion occurred in the adjacent compartment, blowing in the wall separating the compartments, killing appellant's decedent. Naturally, there is no way of ascertaining whether decedent was aware of the danger involved.

The expert testimony offered by appellant and rejected by the trial court was necessary to establish the proper practices and course of conduct in the petroleum distribution business in regard to the handling of and preparing empty tank trucks for welding repairs. I would grant appellant a new trial.