## Whitmyer v. Power

C.P. of Lancaster County, no. CI-99-01312.

*Robin J. Marzella,* for plaintiff.
*Christopher W. Mattson,* for defendant hospital.
*Lauralee B. Baker,* for other defendants.

PEREZOUS, *J.,* September 22, 2004—Presently before the court is a motion for summary judgment filed by the defendant, Lancaster General Hospital (LGH). Defendant contends that they are entitled to summary judgment in this matter on the grounds that (1) plaintiffs failed to establish that defendant CNM Power and the defendant physicians were the actual and/or ostensible agents of LGH such as to render the hospital vicariously liable for their alleged negligence; and (2) plaintiffs failed to establish a direct claim of negligence against LGH. For the following reasons, this court grants in part, and denies in part, the defendant's motion for summary judgment.

This case arises from events that took place during the delivery of plaintiffs' daughter. In 1996, Obstetrics and Gynecology Associates of Lancaster (OGAL) began treating Mrs. Whitmyer for her prenatal care. During the prenatal period, all of her appointments took place at the offices of OGAL. She went to these offices on or about June 13, 1997, when she began to have contractions. An OGAL physician then instructed her to report to LGH

for labor and delivery. Mrs. Whitmyer was admitted to the hospital that day and was transferred to defendant CNM Power's care at or about 11 a.m. On that day, Dr. Kegel, an OGAL physician, was present at the hospital as the attending physician.

Around 12:25 p.m., after defendant Power artificially ruptured Mrs. Whitmyer's membranes, Power and other members of the nursing staff noticed that the amniotic fluid[1] was meconium[2] stained, which is a sign that the baby is in distress. Defendant Power and the nursing staff continued to monitor Mrs. Whitmyer and her unborn baby without consulting or summoning the attending obstetrician, even as the baby's base line fetal heart rate declined and Mrs. Whitmyer requested pain medication.

At or about 5:35 p.m., the baby's heart rate was 60-90, and defendant Power performed the delivery of the infant. At no time was the attending obstetrician summoned. During the course of the delivery, Mrs. Whitmyer sustained a fourth-degree perineal laceration. Defendant Power surgically repaired the laceration without consulting or summoning the attending physician. At some point thereafter, Mrs. Whitmyer allegedly developed rectovaginal fistula.[3]

The plaintiffs, Ann and Timothy Whitmyer, brought suit against LGH and the other defendants by filing a complaint on February 8, 1999. Plaintiffs claim that LGH

---

1. Fluid produced by the extraembryonic membrane which contains the embryo, amniotic fluid, fetal lungs and kidneys. Medical Dictionary Online, http://www.online-medical-dictionary.org.

2. The thick green-to-black mucilaginous material found in the intestines of a full-term fetus. *Id.*

3. Abnormal communication between the rectum and the vagina. *Id.*

is vicariously liable for the allegedly negligent actions of defendant CNM Power and the defendant physicians under an actual and/or ostensible agency theory of liability. In addition, plaintiffs also set forth a corporate negligence claim against the hospital. On March 15, 1999, LGH filed its answer and new matter to the complaint. LGH filed this motion for summary judgment on April 7, 2004.

It is well settled in this Commonwealth that summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. Under the Pennsylvania Rules of Civil Procedure there are two situations in which a summary judgment motion is permissible:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law:

"(1) Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) If, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(a).

Along with this standard, the rule also sets forth the requirements for a response to a motion for summary judgment:

"The adverse party may not rest upon the mere allegations or denials of the pleadings, but must file a response within 30 days after service of a motion identifying:

"(1) One or more issues of fact arising from the evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

"(2) Evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." *Id.*

It is important to note that the moving party has the burden of proving that no genuine issue of material fact exists. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 99-100, 674 A.2d 1038, 1041 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). The appropriate standard of review is also crucial in this court's determination of the present motion. In determining whether summary judgment is appropriate, the court must review the evidentiary record in a light most favorable to the non-moving party, and that party will be given all reasonable inferences created by that evidence. *Bethlehem Steel Corp. v. MATX Inc.,* 703 A.2d 39, 41 (Pa. Super. 1997). In other words, any doubt must be resolved against the party seeking summary judgment, and it should only be granted in cases that are free and clear of doubt. *Davis v. Pennzoil Co.,* 438 Pa. 194, 202, 264 A.2d 597, 601 (1970).

Viewing the facts in a light most favorable to the plaintiffs as the non-moving party, and resolving all doubts in

their favor, summary judgment is proper regarding the plaintiffs' vicarious liability claims, contained in Count XI of the complaint. However, summary judgment is improper regarding the plaintiffs' corporate negligence claim contained in Count XIII of the complaint.

First, LGH contends that plaintiffs failed to establish a genuine issue for trial regarding whether CNM Power and the other physicians were actual and/or ostensible agents of LGH. As a matter of law, then, LGH cannot be held vicariously liable for the alleged negligence of these individuals, and summary judgment is proper.

In plaintiffs' response to LGH's motion for summary judgment, plaintiffs no longer assert that CNM Power was an ostensible agent of LGH. In addition, the plaintiffs did not raise any issues of fact concerning the status of the defendant physicians, thereby conceding that these persons are not the actual and/or ostensible agents of the hospital. See Pa.R.C.P. 1035.2(a). The plaintiffs maintain, however, that CNM Power was the actual agent of LGH, basing their argument on the fact that CNM Power was credentialed to practice midwifery at the hospital.

This argument, however, does not support a finding that CNM Power was the actual agent of LGH. In order to establish actual agency, the plaintiff must show: (1) a master/servant relationship, and (2) direct control or right to control on the part of the alleged principal. See *Myszkowski v. Penn Stroud Hotel Inc.,* 430 Pa. Super. 315, 321, 634 A.2d 622, 625-26 (1993); *Smalich v. Westfall,* 440 Pa. 409, 415, 269 A.2d 476, 481 (1970). This "right to control," moreover, must be the principal's right to control the "details" of the agent's physical conduct. See *id.* The right to supervise, even as to the work and the

manner of performance, does not rise to the level of control necessary for an actual agency theory of liability to attach. *Strain v. Ferroni,* 405 Pa. Super. 349, 361, 592 A.2d 698, 704 (1991).

In the present case, plaintiffs failed to demonstrate a master/servant relationship between CNM Power and LGH. In addition, plaintiffs failed to show LGH's direct control or right to control the "details" of Power's physical conduct. Regarding the vicarious liability issues, then, plaintiffs did not establish that CNM Power was an actual agent of LGH. As a result, summary judgment regarding that issue is proper, and LGH's motion is granted, in part.

During the events giving rise to this lawsuit, LGH and CNM Power were never in an employer/employee relationship. At the time of the delivery, Power and the other physicians were employees of OGAL. The facts support a finding that OGAL, not the hospital, had direct control and right to control the "details" of Power's physical conduct. For example, the collaborative agreement between Power and OGAL provided guidelines for her work performance and governed her practice as a certified nurse midwife. Also, under the terms of the agreement, CNM Power worked under the constant supervision of a physician from OGAL. It was pursuant to this agreement that a certified nurse midwife could practice at LGH. Additionally, this agreement defined the scope of the midwife's practice. The collaborative agreement, not the hospital's "CNM specifics of job duties," controlled the "details" of Power's physical conduct while working at LGH.

Moreover, plaintiffs failed to establish a master/servant relationship between CNM Power and LGH. Rely-

ing solely on *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991), for their claim that Power was LGH's servant, plaintiffs argue that while practicing midwifery within the hospital's walls, LGH not only had a right to control her physical conduct but also had a duty to control such conduct. The plaintiffs' reliance on *Thompson,* however, is misplaced. In *Thompson,* the Pennsylvania Supreme Court dealt solely with issues of corporate negligence. See *Thompson,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). Due to the fact that *Thompson* did not consider any agency issues, reliance upon that decision regarding the servant status of CNM Power is inappropriate. Furthermore, as was previously discussed, plaintiffs did not produce any evidence that showed LGH's direct control or right to control the "details" of Power's physical conduct. As such, CNM Power was not the actual agent of LGH.

Second, LGH's motion regarding the corporate negligence claim must be denied, in part. Viewing the facts in a light most favorable to the plaintiffs as the non-moving party, and resolving all doubts in their favor, summary judgment on this issue is improper. The plaintiffs established a genuine issue of material fact regarding LGH's corporate liability.

Under the corporate negligence theory, a hospital owes four duties directly to its patients:

"(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment . . .; (2) a duty to select and retain only competent physicians . . .; (3) a duty to oversee all persons who practice medicine within its walls as to patient care . . .; and (4) a duty to formulate, adopt and enforce adequate rules and policies

to ensure quality care for the patients . . . ." *Id.* at 339-40, 591 A.2d at 707. (citations omitted)

In order to establish a prima facie case of corporate negligence, a plaintiff must demonstrate: (1) the hospital deviated from a standard of care; (2) the hospital had actual or constructive notice of the defects or procedures which created the harm; and (3) the hospital's conduct was a substantial factor in bringing about the harm. *Rauch v. Mike-Mayer,* 783 A.2d 815, 827 (Pa. Super. 2001), *appeal denied,* 568 Pa. 624, 793 A.2d 909 (2002).

It is important to note that unless the hospital's negligence is obvious, the plaintiff must present expert testimony to establish the hospital's deviation from the standard of care, and that the deviation was a substantial factor in causing the plaintiff's injuries. See *e.g., Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581, 585 (1997). It is not necessary to present expert testimony regarding the second prong of the test, dealing with the hospital's notice. See *Rauch,* 783 A.2d at 828.

Read in a light most favorable to the plaintiffs, a genuine issue of material fact exists concerning LGH's corporate liability, based upon plaintiffs' expert report. In *Welsh,* the Pennsylvania Supreme Court reversed a lower court's grant of summary judgment on the plaintiff's corporate negligence claim. *Welsh,* 698 A.2d at 586. To support her claim, plaintiff produced an expert report which touched on the fact that the doctor was without qualification to perform a cesarean section and that, had the hospital arranged for an appropriate cesarean section to be performed by a qualified doctor, the child would be alive today. *Id.* 698 A.2d at 584. The court found that the report specified a breach of the standard

by the hospital and established that the breach was a substantial harm in causing injury to the child. *Id.* 698 A.2d at 586. As a result, the report sufficiently supported a claim of corporate negligence.

Similarly, the Whitmyers' expert report supports their corporate negligence claim because, taken as a whole, it specifies a breach of the standard of care by LGH, and identifies a causal connection between LGH's conduct and the alleged injury. Dr. Petit addresses these issues directly. Her report states, in pertinent part, "consultation with the attending physician was required in this case. Failure to do so constituted a breach in the standard of care and a violation of the collaborative agreement with Lancaster Hospital." Expert report of Dr. Petit, 5/4/03 at 3. The report goes on to state, in pertinent part, "[i]f Dr. Kegel had been consulted by CNM Power as required, the standard of care would dictate that he undertake the repair himself or provide direct on-site supervision to CNM Power . . . such on-site expertise would have significantly decreased the likelihood of fistula formation, making the additional reparative surgery unnecessary." *Id.* at 4. Viewing this report in a light most favorable to the plaintiffs, it is sufficient to support a prima facie case of LGH's corporate negligence.

In the present case, plaintiffs' expert is properly qualified to render such an expert opinion. It is well settled in Pennsylvania that the standard for qualification of an expert is a liberal one. *Von Der Stuck v. APCO Concrete Inc.,* 779 A.2d 570, 573-74 (Pa. Super. 2001). "The test to be applied when qualifying an expert witness is whether the witness ha[s] any reasonable pretension to

specialized knowledge on the subject under investigation." *Id.* at 574. If such is the case, "he may testify and the weight to be given such testimony is for the trier of fact to determine." *Id.* In the medical field, moreover, "specialties sometimes overlap and a practitioner may be knowledgeable in more than one field." *Rauch,* 783 A.2d at 821. In situations where "[s]ome doctors [are] more qualified than others to provide evidence about specific medical practices," *id.,* the jury will determine the appropriate weight to give the opinion "in light of the qualifications presented by the witness." *Id.*

Here, LGH does not rely on any case law to support its argument that plaintiffs' expert was not qualified to render an opinion regarding the hospital's corporate liability. In *Whittington v. Episcopal Hospital,* 768 A.2d 1144 (Pa. Super. 2001), however, the court allowed a doctor to render an opinion on corporate negligence because he worked in the medical field that was involved in the lawsuit, possessed supervisory duties as an attending obstetrician/gynecologist, held academic appointments, and consistently encountered situations that were similar to the one upon which the lawsuit was based. *Whittington,* 768 A.2d 1144, 1155 (Pa. Super. 2001). Keeping in mind that the qualification standard is a liberal one, Doctor Petit's qualifications meet the test. She was board certified in obstetrics and gynecology, the field involved in the lawsuit. Also, she held positions as staff obstetrician/gynecologist at various hospitals, and was medical director for the Health Enhancement Center at St. Francis Hospital in Wilmington, Delaware. Furthermore, she was licensed by the Board of Physician Quality Assurance. These characteristics, when viewed in a light most favorable to the plaintiffs, qualify Doctor Petit

to render an opinion on the issue of LGH's corporate liability.

Regarding the second prong of plaintiffs' prima facie case of corporate negligence, LGH contends that the Whitmyers failed to offer any evidence, expert or otherwise, demonstrating the hospital's actual or constructive notice of the alleged defects procedures which gave rise to plaintiffs' injuries. Expert testimony, however, is not needed to establish notice. *Rauch,* 783 A.2d at 828. Hospital staff members have a "duty to recognize and report abnormalities in the treatment and condition of its patients." *Id.* A hospital is properly charged with constructive notice when it " 'should have known' of the patient's condition," *id.,* and when the failure to receive actual notice is caused by the "failure to enforce adequate rules and policies." *Id.* In *Rauch,* the court charged a hospital with constructive notice due to the hospital's failure to "enforce adequate rules and policies so as to ensure quality care for its patients." *Id.* Here, viewing the evidence in a light most favorable to the plaintiffs as the non-moving party, it is proper to find that the Whitmyers presented sufficient facts alleging that LGH failed to enforce their own rules and policies so as to ensure quality care for its patients. As a result, it is proper to consider that LGH was on constructive notice of Mrs. Whitmyer's condition and the choices that were made during the course of her care.

Finally, LGH argues that plaintiffs failed to allege any type of "systematic negligence." However, in *Whittington,* the Superior Court clarified that the systematic negligence standard is merely an adequate way to establish notice. *Whittington,* 768 A.2d at 1154. It is not needed to

establish a prima facie case of corporate negligence. *Id.* This standard is simply another way of stating that the hospital must have actual or constructive notice. *Id.* For reasons previously stated, the plaintiffs established such notice. Therefore, viewing the facts presented in a light most favorable to the plaintiffs, summary judgment is improper regarding the plaintiffs' corporate negligence claim, and the defendant's motion will be denied, in part.

Accordingly, the court enters the following:

## ORDER

And now, September 22, 2004, upon consideration of the defendant, Lancaster General Hospital's, motion for summary judgment, along with the briefs and supporting papers filed by the parties, it is hereby ordered that the motion is granted in part, and denied in part, in accordance with this opinion.