J-A11022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES A. ANDERSON, JR., AS ADMINISTRATOR OF THE ESTATE OF VICKIE L. ANDERSON, DECEASED, AND JAMES A. ANDERSON, JR., IN HIS OWN RIGHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PIRELLI TIRE, LLC AND LEMANS CORPORATION D/B/A DRAG SPECIALITIES; AGV LAZER USA, LLC; HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; SUSQUEHANNA VALLEY HARLEY-DAVIDSON A/K/A AND/OR D/B/A FAT WILLIE'S CYCLES, INC. | |
| Appellee | No. 1327 MDA 2016 |

Appeal from the Judgment Entered August 19, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2011-CV-8581 CV

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                **FILED OCTOBER 24, 2017**

James A. Anderson, Jr., as Administrator of the Estate of Vickie L.

Anderson, deceased, and James A. Anderson, Jr., in his own right

---

[*] Former Justice specially assigned to the Superior Court.

("Anderson") appeals from the August 19, 2016 judgment entered in the Dauphin County Court of Common Pleas.[1] We affirm.

The trial court set forth the following procedural history:

> Anderson . . . brings this case as Administrator of the Estate of [Mrs.] Anderson [("Decedent")]. [Decedent] was a passenger on [Anderson's] Harley Davidson motorcycle, being operated by him, when the rear tire experienced a blowout, resulting in a crash which killed her. The tire was identified as a Metzeler ME 880 tire, which is manufactured by [Pirelli Tire LLC, Lemans Corporation d/b/a Drag Specialties ("Pirelli")].

Trial Ct. Op., 7/13/16, at 1 ("Post-Trial Op.").

Anderson asserted a strict liability claim against Pirelli[2] and Susquehanna Valley Harley Davidson a/k/a and/or d/b/a Fat Willie's Cycles, Inc. ("SVHD"), maintaining that the tire manufactured by Pirelli and sold to Anderson by SVHD had a manufacturing defect that caused the accident.[3] On

---

[1] Anderson captioned this as an appeal from the July 13, 2016 order denying his post-trial motions. The final, appealable order, however, was the judgment entered on August 19, 2016. **Becker v. M.S. Reilly, Inc.**, 123 A.3d 776, 777 n.1 (Pa.Super. 2015) (orders denying post-trial motions are interlocutory; the subsequent judgment is the final, appealable order).

[2] As noted by the trial court:

> [Anderson] filed a complaint alleging strict products liability, breach of warranty, negligence, wrongful death, and survival. Prior to trial, [Anderson] withdrew all causes of action for his own personal injuries as well as all claims of negligence with respect to Pirelli.

Post-Trial Op. at 2.

[3] Anderson also asserted a claim that the condition of the tire breached an implied warranty.

- 2 -

December 4, 2015, Anderson filed a motion in limine to preclude the parties from introducing issues and facts concerning negligence in Anderson's strict liability claim. The trial court found that evidence regarding over-deflection/under-inflation of the tire was admissible as evidence of causation, but that Pirelli and SVHD could not argue negligence. N.T., 12/8/15, at 5-7.

Anderson also alleged a strict liability claim against SVHD, AGV Lazer USA, LLC ("AGV Lazer"), and Harley Davidson Motor Company Group, Inc. and a negligence claim against SVHD related to a helmet that AGV Lazer manufactured and that SVHD sold to Decedent. To defend against the claims that the helmet was defective and that SVHD acted negligently in selling the helmet, the defendants presented the expert testimony of Garry Brock, Jr., Ph.D., a biomechanical engineer. Anderson objected to Dr. Brock's testimony, claiming that Dr. Brock was not an expert in helmet design and safety and that the scope of Dr. Brock's testimony went beyond the fair scope of his expert report. The trial court overruled the objections. *See, e.g.,* N.T., 12/16/15, at 38, 40, 41, 43.

Following trial, a jury returned a verdict in favor of Pirelli, SVHD, and AGV Lazer finding that neither the tire nor the helmet was defective, the condition of the tire did not breach an implied warranty, and SVHD was not negligent when it sold the helmet to Decedent. On December 28, 2015,

Anderson filed a motion for post-trial relief, which the trial court denied on July 13, 2016. On August 11, 2016, Anderson filed a notice of appeal.[4]

Anderson raises the following issues on appeal:

> 1. Did the Trial Court err as a matter of law or abuse its discretion when it permitted [Pirelli and SVHD] to conflate and introduce issues of facts concerning negligence into [Anderson's] strict liability claim against [Pirelli and SVHD]?
>
> 2. Did the Trial Court err as a matter of law or abuse its discretion when it permitted defense forensic liability expert, Garry Brock, Jr., to testify regarding matters beyond the scope of his expertise?
>
> 3. Did the Trial Court err as a matter of law or abuse its discretion when it permitted the defense forensic expert, Garry Brock, Jr. to testify regarding matters beyond the fair scope of his expert report?

Anderson's Br. at 2-3.

## I. Admission of Evidence

Anderson first argues that the trial court erred by allowing Pirelli and SVHD to present a comparative negligence theory in a strict liability manufacturing defect case. Anderson claims that the questioning regarding the steps taken by the Andersons to ensure their safety on the motorcycle, the air pressure of the tire, and the weight carried on the motorcycle at the

---

[4] Anderson's notice of appeal was premature, as it was filed before judgment was entered on August 19, 2016. Despite this error, because judgment has been entered, we address Anderson's appeal. *See Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 513–14 (Pa.Super. 1995).

time of the trip was evidence regarding the Andersons' negligence and, therefore, was improperly permitted.

We apply the following standard to the trial court's determination as to the admissibility of evidence:

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Gaudio v. Ford Motor Co.*, 976 A.2d 524, 535 (Pa.Super. 2009) (quoting *Stumpf v. Nye*, 950 A.2d 1032, 1036 (Pa.Super. 2008)). We have found that "[a] party suffers prejudice when the trial court's error could have affected the verdict." *Id.*

To prevail in a strict-liability cause of action, "the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354 (Pa.Super. 2015). This Court has stated that:

> [A] user's negligence is not relevant if the product defect contributed in any way to the harm. However, where the defense offers evidence to establish that the accident was *solely* the result of the user's conduct, and not related in any way with a product defect, it is relevant and admissible for the purpose of proving causation.

*Madonna v. Harley Davidson, Inc.*, 708 A.2d 507, 509 (Pa.Super. 1998) (emphasis in original); *see also Bascelli v. Randy, Inc.*, 488 A.2d 1110, 1113 (Pa.Super. 1985) (evidence that plaintiff traveling at 100 miles per hour

at the time of accident was "admissible for the purpose of showing causation"); *Gaudio*, 976 A.2d at 542 (evidence of whether plaintiff was "in position" at time of accident relevant to causation where theory of liability was that air bag deployed too late; testimony that plaintiff was "out of position" at time of accident was admissible, but trial court abused its discretion in admitting testimony as to **why** he was out of position, such as because he was reaching for radio).[5]

Anderson testified that on the day of the accident, he noticed a "blemish" on the motorcycle's rear tire. Anderson's strict liability claim was premised on the theory that a foreign object got inside the tire during the manufacturing process, that the tire left Pirelli's plant with this defect, and

---

[5] Here, we need not address whether evidence of a plaintiff's contributory negligence is admissible under the limited exceptions of voluntary assumption of the risk, misuse of a product, or highly reckless conduct. **See Gaudio**, 976 A.2d at 541. Rather, we address whether evidence of ordinary negligence is admissible to establish the plaintiff's conduct was the sole cause of the accident. As the **Gaudio** court noted:

> Unlike these limited exceptions, "evidence of a plaintiff's ordinary negligence may not be admitted in a strict products liability action . . . unless it is shown that the accident was **solely** the result of the user's conduct and not related in any [way] with the alleged defect in the product." **Charlton** [**v. Toyota Indus. Equip.,** 714 A.2d [1043,] 1047 [Pa.Super. 1998] (emphasis in original). As we explained in **Madonna**, "a user's negligence is not relevant if the product defect contributed in any way to the harm." **Madonna**, 708 A.2d at 509

*Id.* (emphasis in original).

that the defect caused the blemish and the accident. N.T., 12/8/15, at 77-80; N.T., 12/16/15, at 253-54. Pirelli's and SVHD's defense was that when the tire left their control, there was no foreign object in the tire. Rather, the tire was over-deflected because it had been overloaded and under-inflated and the tire's over-deflection caused the accident. *See, e.g.,* N.T., 12/16/15, at 169, 214, 222-23, 231.

The trial court admitted the challenged evidence on two grounds: as impeachment evidence and as causation evidence.[6] Post-Trial Op. at 3-4. We apply a deferential standard of review and conclude that the trial court did not abuse its discretion.

First, the testimony regarding the safety consciousness of the Andersons, including that they took safety courses, that they reviewed a checklist before riding the motorcycle, and that Anderson would have taken the motorcycle to the shop if he had noticed the blemish while at home, was properly admitted for impeachment. Such evidence was relevant to the credibility of Anderson's testimony that he noticed a "blemish" on the tire during the trip, *see* Pa.R.Evid. 611(b) (scope of cross-examination includes "matters affecting credibility"), and defendants used the evidence for that purpose during closing arguments, N.T., 12/16/15, at 215-19.

---

[6] The trial court further concluded that Anderson's testimony on direct examination "opened the door" to questions regarding safety. Post-Trial Op. at 3-4. Because we conclude that the trial court did not abuse its discretion in admitting the evidence for purposes of impeachment and causation, we need not reach this finding.

Second, the evidence regarding the weight carried on the motorcycle during the trip and the air pressure of the tire was properly admitted as evidence relevant to causation. The trial court concluded:

> [T]he evidence in question is admissible under Pennsylvania law as it tends to establish that the accident was not caused by a defect in the tire, but rather was caused by Plaintiff's failure to properly inflate the tire. At no point did the defense attempt to prove Plaintiff was negligent; the questions at issue were directed at causation. Thus, the Court was correct to admit the evidence at issue and Plaintiff's claim is without merit.

Post-Trial Op. at 4. Based on our review of the record, we discern no abuse of discretion.

Additionally, the trial court properly instructed the jury that the evidence was to be used only as evidence of causation. The trial court instructed the jury that:

> With respect to [Pirelli and SVHD], [Anderson] claims that there was a manufacturer defect from a foreign object in the manufacturing process that caused the tire failure on May 29, 2005. [Pirelli and SVHD] deny any problem with the manufacturing process and assert the cause of the tire failure was underinflation, overdeflection. Anderson is not a defendant in this case. He is not a defendant in this strict liability claim. Concepts of negligence are not relevant or admissible in a strict liability claim. The evidence of under[-]inflation, over[-]deflection and what Anderson saw or didn't see on the tire at the gas station before the accident was admitted solely to the issue of causation. It was presented by [Pirelli and SVHD] to show the cause of the tire failure, not to show that Anderson was negligent. As I said, negligence has no part in a strict liability claim.

N.T., 12/17/15, at 29. Further, during opening statements and closing arguments, Pirelli and SVHD never argued that Anderson was negligent. Rather they argued the under-inflation and over-deflection of the tire caused the accident. Accordingly, we conclude that the trial court properly admitted the evidence.

## II.   Expert Testimony

Anderson next argues that the trial court erred in permitting the expert testimony of Dr. Brock because (1) he testified to matters beyond the scope of his expertise and (2) he testified to matters beyond the fair scope of his expert report.

### A. Beyond the Scope of Expertise

This Court applies the following standard when determining whether a trial court erred in qualifying a witness as an expert:

> "Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court." **West Philadelphia Therapy Center v. Erie Ins. Group**, []751 A.2d 1166, 1167 (Pa.Super.2000) (citation omitted). It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. **Rauch v. Mike-Mayer**, []783 A.2d 815 (Pa.Super.2001). When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. **Miller v. Brass Rail Tavern**, []664 A.2d 525 (1995).

**Wexler v. Hecht**, 847 A.2d 95, 98-99 (Pa.Super. 2004) (quoting **George v. Ellis**, 820 A.2d 815, 817 (Pa.Super. 2003)).

In Pennsylvania, "the standard for qualification of an expert witness is a liberal one." *Von Der Stuck v. Apco Concrete, Inc.*, 779 A.2d 570, 573-74 (Pa.Super. 2001). The Pennsylvania Supreme Court has set forth the following test for trial courts to determine whether to qualify a witness as an expert:

> [t]he test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required [...]. It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

*Miller v. Brass Rail Tavern*, 664 A.2d 525, 528 (Pa. 1995); *accord Reading Radio, Inc. v. Fink*, 833 A.2d 199, 207 (Pa.Super. 2003).

Anderson maintains that the trial court erred in allowing SVHD to question their expert, Dr. Brock, regarding motorcycle helmet design and safety issues. He claims that Dr. Brock was an expert in biomechanical engineering, but had no education in or experience with motorcycle helmet design and safety.

The trial court found:

> In the instant case, while Dr. Brock was not offered as an expert in motorcycle helmet design, he was offered as an expert in biomechanical engineering. Further, Dr. Brock was certainly qualified as an expert in this field, holding a

Ph.D. in mechanical engineering with a focus in biomechanics from Cornell University. As a biomechanical engineer, Dr. Brock "calculate[s] forces, kinematics, body motions [to] . . . describe how the body moves and also injuries and things of that nature of the body." N.T. 12/16/15, at 21. This Court determined that such specialized knowledge, skill, and experience was necessary to assist the Court in analyzing Plaintiff's claims against Susquehanna as to the helmet and its relationship to [Decedent's] injuries. Accordingly, [Anderson]'s claim that Dr. Brock improperly testified beyond the scope of his expertise is without merit.

Post-Trial Op. at 9. Given Pennsylvania's liberal standard for qualification of experts, we conclude that the trial court did not abuse its discretion in permitting Dr. Brock to testify. Dr. Brock was qualified as a biomechanical engineer. Anderson was permitted to, and did, question Dr. Brock regarding his limited experience with helmets prior to this case. This went to the credibility of his testimony and to the weight the jury chose to give such testimony.

## B. Within Fair Scope of Expert Report

Anderson next maintains that Brock testified to matters beyond the scope of his report, including standards, regulations, and testing applicable to helmets. Anderson argues that he was denied an opportunity to adequately prepare a meaningful response.

We apply the following standard to claims that an expert testified beyond the fair scope of his or her report:

The admission of expert testimony is within the trial court's sound discretion and we will not disturb that decision without a showing of manifest abuse of discretion. An expert's testimony on direct examination is to be limited to

- 11 -

the fair scope of the expert's pre-trial report. In applying the fair scope rule, we focus on the word fair. Departure from the expert's report becomes a concern if the trial testimony would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response. Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. We will not find error in the admission of testimony that the opposing party had notice of or was not prejudiced by.

The purpose of requiring a party to disclose, at his adversary's request, the substance of the facts and opinions to which the expert is expected to testify is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony.

*Whitaker v. Frankford Hosp. of City of Phila.*, 984 A.2d 512, 522 (Pa.Super. 2009) (quoting *Stalsitz v. Allentown Hosp.*, 814 A.2d 766, 779-80) (Pa.Super. 2002)) (citations and quotation marks omitted).

Here, the trial court found:

[Anderson] argues Dr. Brock impermissibly testified concerning whether the American Society for Testing and Materials (ASTM) requires any type of standards for manufacturers of helmets. However, the record is clear that Dr. Brock reviewed the applicable ASTM standards in forming his report and took them into consideration in reaching his conclusions. *See* N.T., 12/16/15 at 32-36. Accordingly, this testimony was within the fair scope of his expert report and was, therefore, properly admitted.

[Anderson] also claims Dr. Brock inappropriately testified regarding the standards of both the Department of Transportation (DOT) and the Snell Foundation applicable to motorcycle helmets. However, this claim is also meritless. Dr. Brock lists both the DOT standards and the Snell standards as documents which he reviewed on page 2 of his report. *See* Report of Dr. Garry Brock, 3/9/15, at 2. Further, Dr. Brock goes on to analyze the applicability of the Snell standards to Plaintiff's case on pages 12 -13 of his

- 12 -

report. ***See id.*** at 12-13. Accordingly, this testimony at trial was within the fair scope of his report.

[Anderson] next challenges Dr. Brock's testimony regarding the deposition of [Anderson's] witnesses Dr. Eric Dohner and Dr. Kevin Toosi. Similarly, this claim is without support. Dr. Brock lists Dr. Dohner's deposition as a document he reviewed on page 1 of his report. ***See id.*** at 1. Additionally, Dr. Brock highlights, on pages 8-9 of his report, specific testimony of Dr. Dohner which he found relevant in reaching his conclusion as to whether the helmet was defective. ***See id.*** at 8-9. By the same token, Dr. Toosi's report is listed on page 2 of Dr. Brock's report and expounded on in detail on throughout pages 11 -16. ***See id.*** at 2, 11-16. Therefore, this testimony was properly admitted.

Dr. Brock's testimony concerning the addition of the headset to [Decedent's] helmet was also within the fair scope of his expert report. Not only does Dr. Brock address the addition of the headset on page 12 of his initial report, he again addresses the issue in more detail on page 4 of his supplemental report, which was written after he inspected the helmet. ***See*** N,T. 12/16/15 at 60-61; ***see also*** Report of Dr. Garry Brock, 3/9/15, at 12; Supplemental Report of Dr. Garry Brock, 4/23/15, at 4. Thus, this testimony was properly admitted.

Post-Trial Op. at 6-7. We conclude that the trial court did not abuse its discretion in concluding that Dr. Brock's testimony was within the fair scope of his report, which listed and often discussed the complained of testimony.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2017